UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JENNIFER C., )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] Acting Commissioner )<br>of Social Security, )<br>)<br>    Defendant ) | 2:20-cv-00229-NT |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the May 21, 2019 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 13-2).[2] The ALJ's decision tracks

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of status post prophylactic bilateral mastectomies and reconstructions, bilateral carpal tunnel syndrome, peripheral neuropathy, and degenerative disc disease. (R. 31.) The ALJ further found that despite her impairments, Plaintiff has the residual functional capacity (RFC) to perform light work except that she can frequently handle and operate hand controls bilaterally, occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds, and can tolerate frequent exposure to vibrations. (R. 36.)

Based on the RFC finding, Plaintiff's work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including the representative occupations of counter attendant, mail clerk, and cleaner/housekeeping. (R. 44.) The ALJ determined, therefore, that Plaintiff was not disabled from May 26, 2017, through the date of the ALJ's decision. (R. 45.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind

might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ erred when the ALJ (1) failed to find that Plaintiff's osteoarthritis and polyarthralgias are severe medically determinable impairments; (2) impermissibly relied on the opinion of the state agency consultant because the consultant's review was based on an incomplete record; and (3) found Plaintiff could perform light work despite the limitation of occasional balancing.

### A. Step 2 – Osteoarthritis/Polyarthralgias

At step 2 of the sequential evaluation process, a social security disability claimant must establish the alleged conditions are severe, but this burden is de minimis, and is designed merely to screen out groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123-24 (1st Cir. 1986). The ALJ may find that an impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

3

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. *See also* Social Security Ruling 16-3p, 2017 WL 5180304, at *3 ("An individual's symptoms, such as pain, fatigue, shortness of breath, weakness, nervousness, or periods of poor concentration will not be found to affect the ability to do basic work-related activities for an adult … unless medical signs or laboratory findings show a medically determinable impairment is present.")  A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014).  Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2, *aff'd*, 2009 WL 361193.  In addition, an impairment must meet the 12-month durational requirement in order to be considered "severe."  20 C.F.R, § 404.1509; *Mulero v. Comm'r of Soc. Sec.*, 108 F. App'x 642, 644 (1st Cir. 2004) (to be severe, impairment must satisfy durational requirement).

If error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can

demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

Sean Stanhope, D.O., a rheumatologist, examined Plaintiff in June 2018 and diagnosed Plaintiff with "diffuse polyarthralgias of six year duration." (R. 1838.) Dr. Stanhope also noted right knee effusion and suspected that Plaintiff's underlying anxiety and depression were "very likely contributing to her symptoms." (*Id*.) He also diagnosed Plaintiff with degenerative arthritis diffusely in her spine and believed she also had "some degree of fibromyalgia given her degree of diffuse head to toe pain, lack of restful sleep and underlying significant anxiety and depression." (R. 1838-39.) Osteoarthritis of Plaintiff's right knee and of her cervical and lumbar spine was confirmed through MRI studies. (R. 1834, 1838, 1841.) In February 2019, Dr. Stanhope found limitations due to osteoarthritis and fibromyalgia, specifically noting Plaintiff's low back and knee pain and diffuse soft tissue/muscle pain. (R. 1950-52.)

The ALJ concluded that Plaintiff's degenerative joint disease of the knees was not a severe impairment. (R. 31.) Plaintiff argues there is no medical evidence to support the ALJ's implicit conclusion that Plaintiff's osteoarthritis and arthralgias are not medically determinable impairments. The ALJ, however, pointed to the medical record to support the conclusion. While acknowledging the diagnosis of right knee osteoarthritis and the evidence of Plaintiff's complaints of left and right knee pain, with mild to moderate effusion in the right knee and tenderness in both knees, the ALJ explained that the record also demonstrated good or excellent range of motion in Plaintiff's knees with no atrophy, joint deformity, synovitis, laxity, swelling, warmth, erythema, edema, or motor, sensory or

5

reflex loss. (R. 32.) The ALJ also noted that surgery was not required and that conservative treatment, principally physical therapy, had been administered. (*Id*.) The ALJ further observed that Plaintiff declined an injection for knee pain and appeared never to have followed through on recommendations for additional physical therapy after September 2018. (*Id*.)

As to the polyarthralgias, Dr. Stanhope attributed Plaintiff's diffuse "head to toe pain" to some degree of fibromyalgia, rather than to Plaintiff's polyarthalgias. (R. 1838-39, 1950.) The ALJ specifically discussed Plaintiff's diagnosis of fibromyalgia and supportably found that it is not a medically determinable impairment. (R. 33.) Plaintiff does not contest that determination. Furthermore, the ALJ acknowledged Plaintiff's lower back pain in determining that Plaintiff's degenerative disc disease was a severe impairment. (R. 31, 38.) The symptoms Plaintiff attributes to polyarthalgias, therefore, were otherwise addressed. In fact, Plaintiff has not demonstrated that the osteoarthritis and polyarthralgias result in any functional limitations beyond those assessed by the ALJ. *See, e.g., Carlton v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00463-GZS, 2011 WL 4433660, at *5 (D. Me. Sept. 21, 2011) (it is the plaintiff's burden to supply the medical evidence needed to establish the degree to which her claimed impairments limit her functional capacity); *see also Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015) ("the important point here is that the plaintiff does not point to any evidence that there was any further limitation on her [functional] ability …, and the burden of proof rests with the claimant through the establishment of an RFC"). In other words, Plaintiff has not established that a severe impairment finding would result in any additional limitations on

6

Plaintiff's work capacity. Accordingly, even if the ALJ erred in the step 2 assessment, the error would not warrant remand.

## B. Reliance on State Agency Consultant

The ALJ found the opinion of state medical consultant J. H. Hall, M.D., to be persuasive. Dr. Hall found Plaintiff's degenerative disc disease, carpal tunnel syndrome, peripheral neuropathy, and major joint dysfunction to be severe impairments. (R. 158.) Dr. Hall assessed an RFC, which the ALJ adopted. (R. 161-62.) The ALJ explained that Dr. Hall's assessment of Plaintiff's RFC was consistent with the overall evidence, including physical examination findings reflecting that Plaintiff has for the most part remained neurologically intact, and radiographic findings of the spine showing disc bulging with only mild lumbar stenosis and spondylotic changes of the cervical spine. (R. 42-43.) He also found Dr. Hall's assessment to be consistent with reports of improvement in Plaintiff's condition, as well as her reported daily living activities. (R. 43.) Plaintiff contends that the ALJ could not supportably rely on Dr. Hall's opinion because at the time of his assessment in May 2018, Dr. Hall did have available Dr. Stanhope's June 2018 report and diagnoses.

"[T]he fact that an agency nonexamining consultant has not reviewed the full record is not necessarily fatal to an ALJ's reliance on that consultant's opinion." *Robert L. v. Berryhill*, No. 1:17-cv-00348-JDL, 2018 WL 3599966, at *6 (D. Me. July 27, 2018), adopted, 2018 WL 3901157 (D. Me. Aug. 15, 2018). Generally, "a DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted [that] call[s] the expert's

7

conclusions into question." *Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008). An ALJ may rely on experts' reports despite later-submitted evidence when the new evidence "does not call into question their conclusions." *Emily A. v. Saul*, No. 2:19-cv-00071-JDL, 2020 WL 2488576, at *7 (D. Me. May 14, 2020).

In his RFC assessment, the ALJ considered and discussed the subsequent medical information generated by Dr. Stanhope. The ALJ gave Dr. Stanhope's opinion regarding Plaintiff's exertional limitations only partial weight, finding the degree of recommended limitations were not supported by Dr. Stanhope's own treatment records or by Plaintiff's overall medical records. (R. 42.) The ALJ cited physical examination findings indicating that Plaintiff has for the most part remained neurologically intact, and radiographic findings of the spine showing disc bulging with only mild lumbar stenosis and spondylotic changes of the cervical spine. (*Id.*) The ALJ also found it inconsistent with multiple reports of improvement of Plaintiff's symptoms and Plaintiff's activities of daily living. (*Id.*)

The ALJ appropriately acknowledged the evidence and supportably found that the evidence "could not reasonably be expected to significantly alter [Dr. Hall's] assessment." (R. 43.) Plaintiff has not demonstrated that Dr. Hall's review of Dr. Stanhope's records and opinion "would necessarily have altered [Dr. Hall's] opinion[] in a manner more favorable to [her]." which is the pertinent question here. *O'Bannon v. Colvin*, No. 1:13-CV-207-DBH, 2014 WL 1767128, at *7 (D. Me. Apr. 29, 2014) (collecting cases). The ALJ, therefore, did not err in relying upon Dr. Hall's opinion.

## C. RFC

Plaintiff argues the ALJ's RFC finding is erroneous because the limitation of

occasional balancing is inconsistent light work.

Social Security Ruling 83-10 defines light work, in part, as requiring the ability to walk or stand "a good deal," and defines "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. Plaintiff contends that the ability to balance is necessarily required to walk or stand, and if Plaintiff can only occasionally balance, she cannot perform the jobs identified by the vocational expert or any job at the light exertional level. (SOE at 10-11.) Plaintiff notes that the Department of Labor's Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) defines "balancing" as "[m]aintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces." SCO, App. C at C-3. Plaintiff also cites Social Security Ruling 96-9p, which states that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185, at *7.

When addressing the same argument in another case, the Court wrote:

> First, a plain reading of the SOC/DOT reveals that the balancing limitation applies to "narrow, slippery, or erratically moving surfaces." Light work does not require an individual to work on such surfaces. In addition, SSR 96-9p, upon which Plaintiff relies, applies to sedentary, rather than light, jobs. According to the Ruling, if "an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base." *Id.* As one court observed, SSR 96-9p "does not say that occasional balancing in the normal course of walking or standing would be precluded." *Mort v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-00032-JTK, 2021 WL 372537, at *2 (E.D. Ark. Feb. 3, 2021). Consistent with this assessment, multiple courts have upheld light work RFCs that include a limitation to occasional balancing. *Id.* (citing *Markey v. Berryhill*, No. 6:16-cv-06051, 2017 WL 2560018 (W.D. Ark., June

9

> 13, 2017); *Phelps v. Astrue*, No. 4:11CV1362MLM, 2012 WL 2885378 (E.D. Mo. July 13, 2012); *Archuleta v. Astrue*, No. EP-10-CV-00194-RFC, 2011 WL 3684815 (W.D. Tex. Aug. 22, 2011)). *See also, e.g.*, *Murwin v. Astrue*, No. 1:11-cv-376-DBH, 2012 WL 2923535 (D. Me. June 30, 2012) (rec. dec. aff'd July 18, 2012); *Terrault v. Astrue*, No. 09cv11390-NG, 2011 WL 613701 (D. Mass. Feb. 11, 2011); *Puig v. Astrue*, No. 08-cv-253-JD, 2009 WL 1096500 (D. N.H. Apr. 21, 2009). In short, Plaintiff's interpretation of "balancing" as encompassing the ability to remain upright on level terrain is unconvincing and remand based on the balancing requirement is not warranted.

*Donald M. v. Saul*, No. 2:20-cv-00364-JDL, 2021 WL 2589179, at *4 (D. Me. June 24, 2021), adopted, 2021 WL 3234591 (D. Me. July 29, 2021). The same reasoning applies here. The ALJ did not err in the RFC assessment.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 25th day of August, 2021.